[Cite as *State v. Nurein*, 2022-Ohio-1711.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
UNION COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                      CASE NO.  14-21-18

     v.

MOHAMED NUREIN,                    O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 2021-CR-0041

Judgment Affirmed

Date of Decision:  May 23, 2022

APPEARANCES:

     *Charles A. Koenig* for Appellant

     *Samantha Hobbs* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Mohamed Nurein, appeals the June 30, 2021 judgment of sentence of the Union County Court of Common Pleas. For the reasons that follow, we affirm.

## I. Background

{¶2} Shortly after 8:00 a.m. on the morning of February 13, 2021, the Union County Sheriff's Office received a 911 call reporting gunshots at an apartment complex on Meadows Drive in Marysville. The caller reported that a short, slender Black male dressed in a blue shirt, black pants, and a black hat had fired a gun into one of the apartments. The caller further stated that the man had driven away in a white SUV, but that the white SUV had returned and was parked outside of the apartments.

{¶3} Responding to the 911 call, law enforcement officers located a white SUV that matched the caller's description. The vehicle was occupied by one man, who generally matched the caller's description of the shooter. Law enforcement officers ordered the man to exit the vehicle, and after about 30 seconds, he complied. The man was taken into custody and identified as Nurein.

{¶4} Once in custody, Nurein informed the officers that there was a handgun in the center console of the white SUV. The officers entered the vehicle, located a Century Arms 9 mm handgun in the center console as described by Nurein, and

seized the weapon. The handgun was found unloaded and without a magazine, but an empty magazine was found in the back of the vehicle a short time later. Furthermore, officers collected one live 9 mm round from the driver's-side floorboard and another live 9 mm round from the ground next to the vehicle.

{¶5} Nurein was then placed in the backseat of a police cruiser. There, Nurein was told that he would be taken to the police station where his hands would be swabbed to test for the presence of gunshot residue. Toward the end of the officer's explanation, Nurein licked and rubbed his hands together. In spite of Nurein's actions, samples from Nurein's hands were preserved for later testing.

{¶6} Meanwhile, law enforcement officers went about establishing which apartment had been the target of the shooting. Eventually, officers located an apartment with three apparent exterior bullet holes. In one place, a bullet appeared to have passed through the soffit and roof. In another, a bullet appeared to have penetrated the exterior wall of a second-story room. Finally, a bullet appeared to have struck the apartment's front door near the deadbolt lock. Officers established contact with the residents of the apartment and learned that the apartment was occupied by Nurein's ex-wife, Zahra, and two of Nurein's children, including his son, K.A. Officers further learned that Zahra and the two children had been inside of the apartment at the time of the shooting and that Zahra was the registered owner of the white SUV in which Nurein was located.

**{¶7}** Numerous pieces of evidence were collected in and around Zahra's apartment. Outside of the apartment, two to three feet to the right of the front door, officers recovered a spent 9 mm shell casing. In addition, officers extracted an intact bullet from the exterior wall of the second-story room, and Zahra gave officers a bullet fragment she found in the living room immediately behind the front door. The bullet apparently fired through the soffit and roof was not recovered.

**{¶8}** This evidence was subsequently analyzed. The spent shell casing collected from outside of Zahra's apartment was found to have the same markings as the two live 9 mm rounds found in and around the white SUV. Furthermore, ballistics testing established that the handgun taken from the white SUV was the weapon that fired the cartridge found outside of Zahra's apartment as well as the bullet and bullet fragment obtained from within Zahra's apartment. Finally, the sample taken from Nurein's hands tested positive for the presence of gunshot residue.

**{¶9}** On March 9, 2021, the Union County Grand Jury returned an indictment charging Nurein as follows:

- Count One of felonious assault in violation of R.C. 2903.11(A), a second-degree felony, with an accompanying firearm specification pursuant to R.C. 2941.145(A) and a forfeiture specification pursuant to R.C. 2941.1417(A);

- Count Two of endangering children in violation of R.C. 2919.22(A), a first-degree misdemeanor;

- Count Three of endangering children in violation of R.C. 2919.22(A), a first-degree misdemeanor;

- Count Four of improperly discharging a firearm at or into a habitation or school safety zone in violation of R.C. 2923.161(A)(1), a second-degree felony, with an accompanying firearm specification pursuant to R.C. 2941.145(A) and a forfeiture specification pursuant to R.C. 2941.1417(A);

- Count Five of improperly discharging a firearm at or into a habitation or school safety zone in violation of R.C. 2923.161(A)(1), a second-degree felony, with an accompanying firearm specification pursuant to R.C. 2941.145(A) and a forfeiture specification pursuant to R.C. 2941.1417(A);

- Count Six of attempted aggravated burglary in violation of R.C. 2923.02 and 2911.11(A)(2), a second-degree felony, with an accompanying firearm specification pursuant to R.C. 2941.145(A) and a forfeiture specification pursuant to R.C. 2941.1417(A);

- Count Seven of attempted trespass in a habitation in violation of R.C. 2923.02 and 2911.12(B), a fifth-degree felony, with an accompanying firearm specification pursuant to R.C. 2941.145(A) and a forfeiture specification pursuant to R.C. 2941.1417(A);

- Count Eight of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony; and

- Count Nine of aggravated menacing in violation of R.C. 2903.21(A), a fifth-degree felony.[1]

On March 12, 2021, Nurein appeared for arraignment and pleaded not guilty to the counts and specifications of the indictment.

---

[1] After the incident, the Union County Department of Job and Family Services ("JFS") became involved and instituted an at-home safety plan with respect to Nurein and Zahra's two children. This charge related to Nurein's alleged threatening conduct toward a JFS employee during the course of JFS's involvement.

{¶10} On March 29, 2021, the Union County Grand Jury returned a superseding indictment additionally charging Nurein with one count, Count Ten, of having weapons while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony.[2] On April 7, 2021, Nurein appeared for arraignment and pleaded not guilty to the counts and specifications of the superseding indictment.

{¶11} On April 29, 2021, the State filed a motion requesting that the trial court call Zahra as a court's witness under Evid.R. 614. On May 5, 2021, the trial court granted the State's motion.

{¶12} A jury trial commenced on May 10, 2021. On May 11, 2021, the jury found Nurein guilty of all the counts and firearm specifications charged in the superseding indictment. The trial court accepted the jury's verdicts and continued the matter for the preparation of a presentence investigation report.

{¶13} The matter proceeded to sentencing on June 30, 2021. At the sentencing hearing, the trial court determined that Counts Six and Seven would merge for purposes of sentencing. The State elected to have the trial court sentence Nurein on Count Six. In all, for Counts One through Six and Counts Eight through Ten, the trial court sentenced Nurein to a minimum term of 15 years and 3 months in prison, 12 years of which is mandatory, and a maximum term of 18 years and 3 months in prison. Finally, the trial court ordered forfeiture of Nurein's handgun,

---

[2] On the day of the shooting incident, Nurein was under indictment for multiple drug-related felonies in Franklin County Court of Common Pleas case number 20-CR-005386.

along with any magazines and ammunition. The trial court filed its judgment entry of sentence on June 30, 2021.

## II. Assignments of Error

{¶14} On July 21, 2021, Nurein timely filed a notice of appeal. He raises the following six assignments of error for our review:

> **1. The verdicts of the jury finding the appellant guilty of violating R.C. 2903.11, 2919.22, 2923.161, 2911.11 and 2911.12, Counts 1 through 7, were contrary to the manifest weight of the evidence.**
>
> **2. The evidence adduced at trial is insufficient as a matter of law to support appellant's convictions on Counts 6 and 7, attempted aggravated burglary and attempted trespass into a habitation.**
>
> **3. Appellant was deprived of his constitutional right to due process in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, when the trial court called the victim as a court witness, pursuant to Evid.R. 614.**
>
> **4. Appellant was deprived of his constitutional rights to due process and to confront his accusers in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, as a consequence of the trial court admitting hearsay testimony of a recorded statement by appellant's minor son under Evid.R. 803(5) as a past recollection recorded.**
>
> **5. Appellant was deprived of his constitutional rights to due process in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, as a consequence of the court denying him a meaningful opportunity to present a complete defense.**

**6. Appellant was deprived of his constitutional rights to due process in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, as a consequence of ineffective assistance of counsel.**

For ease of discussion, we elect to address the assignments of error out of the order they were presented.

### III. Discussion

**A. Third Assignment of Error: Did the trial court abuse its discretion by calling Zahra as a court's witness pursuant to Evid.R. 614?**

{¶15} In his third assignment of error, Nurein argues that the trial court abused its discretion by calling Zahra as a court's witness. Nurein maintains that it was inappropriate to call Zahra as a court's witness because there was no indication that Zahra was going to testify in a manner inconsistent with her earlier statements to law enforcement officers. Nurein contends that the State simply did not like Zahra's anticipated testimony that he was not the shooter and that the State's request that Zahra be called as a court's witness was a subterfuge intended to permit the State to cross-examine what should have been its own witness.

**i. Applicable Law & Standard of Review**

{¶16} Under Evid.R. 614(A), "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." "The purpose of calling a witness as a court's witness is to

allow for a proper determination in a case where a witness is reluctant or unwilling to testify, or there is some indication that the witness's trial testimony will contradict a prior statement made to police." *State v. Baskin*, 3d Dist. Allen No. 1-18-23, 2019-Ohio-2071, ¶ 39. "'A witness whose appearance is important to the proper determination of the case, but who appears to be favorable to the other party, is a principal candidate for application of Evid.R. 614(A).'" *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 23, quoting *State v. Curry*, 8th Dist. Cuyahoga No. 89075, 2007-Ohio-5721, ¶ 18.

{¶17} The decision whether to call a witness as a court's witness under Evid.R. 614(A) is within the trial court's discretion and will be reversed only for an abuse of that discretion. *Baskin* at ¶ 40. An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

**ii. The trial court did not abuse its discretion by calling Zahra as a court's witness.**

{¶18} Nurein argues that it is appropriate to utilize Evid.R. 614(A) when the witness is unwilling or reluctant to testify, when the witness is likely to provide unexpectedly damaging testimony, or when it is expected that the witness's testimony will contradict prior statements made to police. However, Nurein claims that none of these circumstances existed here because Zahra was not so much unwilling or reluctant to testify as she was "simply not amenable with the theory

that the State had invented against [Nurein]." Nurein notes that Zahra had always maintained that he was not the shooter and thus her expected exculpatory testimony could not be inconsistent with her prior statements. He also contends that Zahra had always been cooperative with the State, but that the State "did not like her version of the truth."

{¶19} Notwithstanding Nurein's arguments, this case presented a textbook occasion for application of Evid.R. 614(A). In support of its request to have Zahra called as a court's witness, the State represented that Nurein had called Zahra while he was incarcerated in the Tri-County Regional Jail and that Zahra and her brother had visited Nurein's defense counsel at his office. The State also submitted screenshots of text messages exchanged between Zahra and a Union County victim advocate. In the first text message, the victim advocate informed Zahra that the prosecutor wanted to meet with her and K.A. and asked whether Zahra and K.A. would be available to meet with the prosecutor at a particular date and time. Zahra responded, "Hey don't want to speak to you please speak to my husband lawyer about anything that concerns me and his case * * *." In reply, the victim advocate advised Zahra that she and K.A. would be required to attend Nurein's trial and that, should she change her mind, the prosecutor would still be available to meet with her beforehand. Zahra then sent the advocate the following series of messages: "Speak to my lawyer thank you," "Notify him with this information," "This is so

unprofessional and unjust please notify my lawyer," and "Thank you and have a great day won't be responding anymore bye."

**{¶20}** At a pretrial hearing on the State's request, the State further explained that "despite [the] court's order not to have contact with [Zahra], [Nurein] has had multiple contacts with her including a phone call where she was crying and screaming." (May 5, 2021 Tr. at 4). The State indicated that there had been 189 phone calls between Zahra and Nurein. Moreover, although the State acknowledged that Zahra committed to attend Nurein's trial, the State represented that she had been reluctant and not "cooperative in terms of trial preparation or with law enforcement." (May 5, 2021 Tr. at 5).

**{¶21}** Based on the State's submissions, it is clear that Zahra, whose testimony was essential to the proper determination of the case, was partial in favor of Nurein. *See Renner*, 2013-Ohio-5463, at ¶ 23. Zahra is Nurein's ex-wife and the mother of two of Nurein's children, and she remained in frequent (and forbidden) contact with Nurein throughout the months leading up to trial. Furthermore, Zahra willingly communicated with Nurein's defense counsel, and in fact appeared to regard Nurein's defense counsel as her own attorney, while simultaneously rejecting the State's offers to talk to her and K.A. Under these circumstances, it was not an abuse of discretion for the trial court to call Zahra as a court's witness under Evid.R. 614(A). *See State v. Adkins*, 8th Dist. Cuyahoga No. 108737, 2020-Ohio-1618, ¶

63-65 (application of Evid.R. 614(A) appropriate where witness had an ongoing relationship with the defendant, spoke with the defendant on the phone hundreds of times after the defendant's arrest, and willingly met with defense counsel while refusing to meet with the prosecution); *State v. Croom*, 2d Dist. Montgomery No. 25094, 2013-Ohio-3377, ¶ 77 (application of Evid.R. 614(A) appropriate where the witnesses "maintained relationships with their respective boyfriends at the time of trial, and they were being asked to provide incriminating testimony against those boyfriends").

{¶22} Nurein's third assignment of error is overruled.

**B. Fourth Assignment of Error: Did the trial court err by admitting video footage of K.A.'s statements to police?**

{¶23} In his fourth assignment of error, Nurein argues that the trial court erred by admitting a police body camera video recording of statements K.A. made to law enforcement officers who responded to the shooting. In this video, K.A. tells Zahra to "tell the truth," identifies the shooter as Zahra's "old husband," "Mohamed," and states that "Mohamed" had banged on the apartment door. Nurein contends that this video was admitted in violation of his constitutional right to confront his accusers and that it also constituted inadmissible hearsay.

**i. Applicable Law & Standard of Review**

{¶24} "The Confrontation Clause to the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment,

-12-

provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.'"" *State v. Thomas*, 3d Dist. Marion No. 9-19-73, 2020-Ohio-5379, ¶ 17, quoting *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354 (2004), quoting the Confrontation Clause.  The similar provisions of Section 10, Article I of the Ohio Constitution "provide[] no greater right of confrontation than the Sixth Amendment * * *." *State v. Self*, 56 Ohio St.3d 73, 79 (1990).

{¶25} "Only testimonial hearsay implicates the Confrontation Clause." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 185.  "'[T]estimonial statements are those made for "a primary purpose of creating an out-of-court substitute for trial testimony."'" *Id.*, quoting *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 40, quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143 (2011).  Statements qualify as testimonial if they have a "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266 (2006).  The Confrontation Clause prohibits admission of testimonial hearsay statements made by a witness who does not appear at trial "unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness." *Maxwell* at ¶ 34, citing *Crawford* at 53-54.

**{¶26}** Even where the Confrontation Clause does not operate to prohibit the admission of a hearsay statement, the statement may nonetheless be inadmissible under the rules of evidence. *See State v. Nevins*, 171 Ohio App.3d 97, 2007-Ohio-1511, ¶ 36 (2d Dist.) ("[T]estimony may be admissible under the Confrontation Clause yet inadmissible under the rules of evidence, and vice versa * * *."). Under the rules of evidence, hearsay is generally inadmissible unless an exception to the hearsay rule applies. Evid.R. 802. "Evid.R. 803 is one such rule which permits the admission of certain hearsay statements even though the declarant is available as a witness." *Dayton v. Combs*, 94 Ohio App.3d 291, 300 (2d Dist.1993).

**{¶27}** In this case, K.A. testified but could not remember the statements he made to law enforcement officers on the morning of the shooting. As a result, the State sought to introduce the video recording of K.A.'s statements as a recorded recollection. Evid.R. 803 excludes the following from the hearsay rule:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Evid.R. 803(5).

**{¶28}** Nurein did not object to the admission of K.A.'s recorded statement either as a violation of his rights under the Confrontation Clause or as a violation of

the hearsay rule. Consequently, we review the trial court's admission of K.A.'s recorded statement for plain error. *See Thomas*, 2020-Ohio-5379, at ¶ 16; *State v. Brown*, 3d Dist. Allen No. 1-19-61, 2020-Ohio-3614, ¶ 11. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Under the plain-error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors. *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), citing *State v. Moreland*, 50 Ohio St.3d 58, 63 (1990). We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**ii. The trial court did not commit plain error by admitting the video footage of K.A.'s statements to police.**

{¶29} In this case, we need not decide whether the video recording was properly admitted under Evid.R. 803(5) or whether the recording was admitted in violation of Nurein's Confrontation Clause rights. Even assuming error in both respects, we conclude that the trial court did not commit plain error because Nurein cannot demonstrate that he was prejudiced by admission of the video recording.

-15-

**{¶30}** As Nurein himself points out, the evidence against him in this case was mostly circumstantial. Indeed, through his recorded statement, K.A. was the only person to clearly and directly identify Nurein as the shooter. Furthermore, Nurein has highlighted evidence that suggested that he could not have been the shooter, most notably testimony from Zahra that he was with her inside of the apartment when the shooting started. Nevertheless, even setting aside K.A.'s identification and giving due consideration to Zahra's potentially exculpatory testimony, there is overwhelming evidence demonstrating that Nurein was the shooter.

**{¶31}** First, while Nurein is correct that none of the other witnesses identified him in the courtroom as the shooter, there was testimony at least indirectly identifying him. Joe Stone, the 911 caller, and his sister, Brenda Stone, each testified that they were outside smoking cigarettes when they witnessed a man discharge a firearm into one of the apartments. (May 10, 2021 Tr., Vol. II, at 46-47, 51, 64-66, 69). Joe and Brenda each described the shooter in similar terms—a Black male, between 5'7" and 5'9", wearing blue and black clothing. (May 10, 2021 Tr., Vol. II, at 49, 53, 65). Although Joe stated that he did not see the man law enforcement officers arrested when they arrived at the apartment complex, Brenda testified that she did see the arrestee and that the arrestee was the person she had seen shoot the gun into the apartment. (May 10, 2021 Tr., Vol. II, at 49, 67-68).

There is no dispute that Nurein was the person arrested at the apartment complex on the morning of February 13, 2021. Therefore, through Brenda's testimony, Nurein was identified as the shooter, albeit circuitously.

{¶32} Furthermore, Nurein's conduct after he was detained served as further proof that he was the shooter. At trial, the State presented a video recording depicting Nurein in the backseat of the police vehicle shortly after he was detained. In the video, an officer informs Nurein that he will be taken to the police station where his hands will be swabbed to test for the presence of gunshot residue. (State's Ex. 70). Nurein can then be seen licking the palm of his left hand and rubbing his hands together for approximately five seconds. (State's Ex. 70). Apart from being the basis for his tampering-with-evidence charge, efforts like Nurein's to "'alter or destroy evidence * * * can serve as admissions by conduct of a consciousness of guilt'" and thus of guilt itself. *State v. Brodbeck*, 10th Dist. Franklin No. 08AP-134, 2008-Ohio-6961, ¶ 48, quoting *State v. Brown*, 8th Dist. Cuyahoga No. 52593, 1988 WL 86965, *3 (July 28, 1988); *Brodbeck* at ¶ 44.

{¶33} Finally, substantial physical evidence points to Nurein being the shooter. The evidence at trial showed that Nurein was taken into custody immediately after exiting Zahra's white SUV, and no evidence was presented suggesting that anyone other than Nurein had been inside of the vehicle in the minutes preceding Nurein's arrest. Moments after Nurein was detained, a 9 mm

handgun and a live 9 mm round were recovered from inside of Zahra's white SUV and a second live 9 mm round was collected nearby. A bullet, a bullet fragment, and a spent shell casing were then obtained from inside of Zahra's apartment and from the area surrounding Zahra's apartment. Zahra testified that the bullet holes corresponding to the recovered bullet and bullet fragment had not been there before the morning of February 13, 2021. (May 10, 2021 Tr., Vol. II, at 117). The live 9 mm rounds recovered in and around Zahra's white SUV had the same markings as the spent shell casing found outside of Zahra's apartment. (May 11, 2021 Tr., Vol. I, at 39). Moreover, analysis by the Ohio Bureau of Criminal Investigation ("BCI") identified the bullet, bullet fragment, and spent shell casing as having been fired from the 9 mm handgun located in Zahra's white SUV. (May 11, 2021 Tr., Vol. I, at 123-125, 129, 132); (State's Ex. 63). BCI also tested samples taken from Nurein's hands after his arrest, which came back positive for the presence of gunshot residue. (May 11, 2021 Tr., Vol. I, at 106-109); (State's Ex. 51).

{¶34} In light of the totality of the evidence in the record, we cannot conclude that the outcome of Nurein's trial clearly would have been different had K.A.'s recorded statements not been admitted as evidence. At trial, Brenda effectively identified Nurein as the shooter, and evidence was presented showing that in the moments following his arrest, Nurein acted in a manner suggesting his awareness of his guilt. Furthermore, the evidence indicated that the bullet holes observed on

Zahra's apartment were made on the morning of February 13, 2021, rather than some earlier time. The evidence also tied Nurein directly to the handgun that fired the bullets that created those holes, and the results of the gunshot residue testing lent significant support for a conclusion that Nurein was the person who fired that handgun. Accordingly, we conclude that the trial court did not commit plain error by admitting the video recording of K.A.'s statements.

**{¶35}** Nurein's fourth assignment of error is overruled.

**C. Fifth Assignment of Error: Did the trial court unconstitutionally deprive Nurein of a meaningful opportunity to present a complete defense?**

**{¶36}** In his fifth assignment of error, Nurein argues the trial court violated his constitutional rights by preventing him from presenting a complete defense. Specifically, Nurein claims the trial court prohibited him from pursuing lines of cross-examination that would have demonstrated that an alternative suspect, Zahra's ex-boyfriend, Riyann, had violently confronted Zahra in the past and had possibly done so again.

**i. Applicable Law**

**{¶37}** As the Supreme Court of Ohio has explained:

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restriction." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct.

> 1261, 140 L.Ed.2d 413 (1998). And states have a legitimate interest in ensuring that triers of fact are presented with reliable evidence and have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials" to further that goal. *Scheffer* at 308, 309, 118 S.Ct. 1261, 140 L.Ed.2d 413. Such "rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve'" and if they do not "infringe[] upon a weighty interest of the accused." *Id.* at 308, 118 S.Ct. 1261, 140 L.Ed.2d 413, quoting *Rock v. Arkansas*, 483 U.S. 44, 56, 58, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

*State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 59.

{¶38} "'A complete defense' may include evidence of third-party guilt." *State v. Gillispie*, 2d Dist. Montgomery Nos. 22877 and 22912, 2009-Ohio-3640, ¶ 120, citing *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727 (2006). But in making such a defense, the accused "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038 (1973). Thus, "criminal defendants do not necessarily have a right to present *all* evidence of third-party guilt." (Emphasis sic.) *State v. Jones*, 2d Dist. Montgomery No. 27354, 2018-Ohio-2332, ¶ 33.

{¶39} "[I]t is widely accepted that evidence introduced to prove that another person may have committed the crime with which the defendant is charged "'may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove

or disprove a material fact in issue at the defendant's trial[.]'"'" *Id.* at ¶ 34, quoting *Holmes* at 327, quoting 40A American Jurisprudence 2d, Homicide, Section 286 (1999). "'"[F]requently matters offered in evidence for [the purpose of showing third-party guilt] are so remote and lack such connection with the crime that they are excluded.'"'" *Id.*, quoting *Holmes* at 327, quoting 41 Corpus Juris Secundum, Homicide, Section 216 (1991).

## ii. Nurein was not deprived of his right to present a complete defense.

{¶40} Nurein identifies two instances in which the trial court purportedly limited his cross-examination of witnesses in a way that deprived him of the opportunity to fully present his third-party-guilt defense. The first occurred while his trial counsel was cross-examining Zahra:

| [Nurein's Counsel]: | Do you know – did you date a man named Riyann? |
|---|---|
| [Zahra]: | Yes. |

\* \* \*

| [Nurein's Counsel]: | Did you have problems with Riyann? |
|---|---|
| [Zahra]: | Yeah. |
| [Nurein's Counsel]: | Okay, what kind of problems with Riyann? |
| [Prosecutor]: | Object to the relevance, Your Honor. |
| [Trial Court]: | (Inaudible) |

[Nurein's Counsel]: Yeah, I think it is relevant. Um, there's a prior incident I want to get – I'll rephrase the question, Your Honor.

* * *

[Nurein's Counsel]: Was there an incident in September between you and Riyann?

[Zahra]: Yeah, September 9th or 8th, yeah.

[Nurein's Counsel]: Okay. Were you – were you assaulted?

[Prosecutor]: Object, Your Honor.

[Zahra]: Yeah.

[Trial Court]: I'm going to sustain the objection unless you can show --

[Zahra]: Yeah.

[Trial Court]: -- a current nexus. Don't answer the question.

[Nurein's Counsel]: All right, but there was an incident in September?

[Zahra]: There was incident and –

[Trial Court]: I sustained his objection on this.

[Nurein's Counsel]: When was the last time you had contact with Riyann?

[Zahra]: Oh, he – he been texting me, like, couple days later when he text me and he send me information about this case or something.

[Nurein's Counsel]: He sent you information about this case?

[Zahra]: Yeah.

[Nurein's Counsel]: So, he's been – he's staying with you while this case has been going on?

[Zahra]: Yeah.

[Nurein's Counsel]: Is that on your cell phone?

[Zahra]: Yeah.

[Nurein's Counsel]: Is that what you showed me when we met last Saturday?

[Zahra]: Yeah, the one I show you.

[Prosecutor]: Object, Your Honor.

[Trial Court]: Sustained.

[Zahra]: Yeah, exactly.

[Trial Court]: The jury will disregard that answer and the question.

(May 10, 2021 Tr., Vol. II, at 112-113).

{¶41} The second instance occurred while K.A. was being cross-examined regarding his video-recorded statements:

[Nurein's Counsel]: Hi, [K.A.]. How are you? You said it was your mom's old boyfriend [that shot at Zahra's apartment]. Does she have an old boyfriend that you remember? Is that a yes? Do you know that old boyfriend's name?

[K.A.]: Mohamed.

| [Nurein's Counsel]: | Mohamed.  It's not Riyann? |
|---|---|
| [Trial Court]: | Asked and answered.  Are you through with the witness then? |
| [Prosecutor]: | I am, Your Honor. |
| [Trial Court]: | You have no questions, [Nurein's trial counsel], of [K.A.] before the jury? |
| [Nurein's Counsel]: | No, Your Honor. |

(May 10, 2021 Tr., Vol. II, at 130).

{¶42} After reviewing the record, we conclude that the trial court did not deprive Nurein of his right to present a complete defense by sustaining the State's objections and limiting his cross-examination of Zahra and K.A.  With respect to Zahra, it is clear that the trial court did not entirely foreclose Nurein from asking questions about Riyann or the alleged September incident.  Rather, consistent with the well-established rule that evidence offered for the purpose of showing third-party guilt must sufficiently connect the third party to the crime, the trial court simply required that Nurein establish a direct link between the alleged September incident and the shooting.  For instance, testimony about the alleged September incident might have been relevant if Nurein elicited evidence that Riyann continued to harass Zahra up until February 2021 or if the alleged September incident represented one in a series of confrontations between Zahra and Riyann potentially culminating in the shooting.  The trial court afforded Nurein an opportunity to

attempt to draw such a connection through appropriate cross-examination, but his trial counsel did not pose questions tailored to that purpose, and in any event, it is unclear whether there even existed facts to warrant such questioning. Again, when presenting a defense, the defendant is subject to the rules of evidence and procedure, including the trial court's broad discretion to "impose reasonable limits on cross-examination based on a variety of concerns, such as * * * marginally relevant interrogation." *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001); Evid.R. 611(B). Here, given that the trial court gave Nurein some chance to connect the alleged September incident to the shooting, the trial court did not abuse its discretion so as to deprive Nurein of his right to present a full and meaningful defense.

{¶43} The same is true with respect to the cross-examination of K.A. Nurein's trial counsel cross-examined K.A. about K.A.'s video-recorded identification of Nurein as the shooter. Nurein's trial counsel asked K.A. the name of the "old boyfriend" K.A. was referring to in the video, and K.A. responded that it was "Mohamed." Thus, when the trial court intervened after Nurein's trial counsel asked K.A. whether the name of the "old boyfriend" was Riyann, the trial court was correct that the question had already been asked and answered. Unfortunately for the defense, K.A.'s answer was an identification of Nurein as the shooter, not the former boyfriend. However, nowhere did the trial court indicate that Nurein would not be permitted to ask K.A. any questions about Riyann. Instead

of running the risk of asking K.A. additional questions about Riyann, Nurein's trial counsel opted to not question K.A. in front of the jury. Therefore, insofar as Nurein might have been denied the opportunity to elicit testimony about Riyann from K.A., the fault does not lie with the trial court.

{¶44} Nurein's fifth assignment of error is overruled.

**D. Second Assignment of Error: Does sufficient evidence support the jury's verdicts on Counts Six and Seven?**

{¶45} In his second assignment of error, Nurein argues that the jury's verdicts on Count Six (attempted aggravated burglary in violation of R.C. 2923.02 and 2911.11(A)(2)) and Count Seven (attempted trespass in a habitation in violation of R.C. 2923.02 and 2911.12(B)) are not supported by sufficient evidence. Specifically, Nurein maintains that the State failed to present sufficient evidence that he did not have privilege to enter Zahra's apartment.

**i. Standard of Review**

{¶46} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

### ii. Nurein's Offenses

**{¶47}** Nurein was found guilty of two attempt offenses in violation of R.C. 2923.02(A), which provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." The offenses allegedly attempted by Nurein were aggravated burglary in violation of R.C. 2911.11(A)(2) and attempted trespass in a habitation in violation of R.C. 2911.12(B). R.C. 2911.11(A)(2) provides:

> (A)    No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * *:
>
> * * *
>
> (2)   The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

R.C. 2911.12(B) provides that "[n]o person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."

{¶48} "Trespass" is an element of both R.C. 2911.11(A)(2) and 2911.12(B). "A 'trespass' is committed when a person, without privilege to do so, knowingly enters or remains on the land or premises of another." *State v. Potter*, 3d Dist. Hancock No. 5-19-14, 2020-Ohio-431, ¶ 9, citing R.C. 2911.10 and 2911.21(A)(1). "Privilege" is defined in the Revised Code as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12). "For purposes of criminal trespass, privilege 'includes permission to enter the premises given by a resident of the premises.'" *State v. Smith*, 2d Dist. Montgomery No. 25048, 2012-Ohio-4861, ¶ 12, quoting *State v. Clelland*, 83 Ohio App.3d 474, 490 (4th Dist.1992).

### iii. Sufficient evidence supports the jury's verdicts on Counts Six and Seven.

{¶49} In arguing that the jury's verdicts on Counts Six and Seven are not supported by sufficient evidence, Nurein relies almost exclusively on Zahra's trial testimony. He observes that Zahra "said [he] was an overnight guest at her apartment from the evening of February 12, 2021 * * * through the following day when the shooting incident occurred," that Zahra "testified that he had [the]

privilege [to enter her apartment]," and that Zahra "testified that she didn't throw him out" or revoke her permission. Nurein also notes that, when he was arrested, he was in possession of a key to Zahra's apartment, which was attached to the keys to Zahra's white SUV.

{¶50} But the fact that evidence was presented from which the jury could have found that Nurein had the privilege to enter Zahra's apartment does not mean that the State failed to present sufficient evidence to enable the jury to make the contrary finding. As detailed under Nurein's fourth assignment of error, the State presented ample evidence supporting that Nurein was the person who fired the handgun at Zahra's apartment on the morning of February 13, 2021. Furthermore, the State presented evidence showing that one of the gunshots was fired at Zahra's front door and that the bullet struck the door at a downward angle near the deadbolt lock. (State's Exs. 19, 28). The State also established that a spent shell casing was recovered two to three feet away from Zahra's front door. (State's Exs. 18, 19, 20). A bullet fragment was found in the living room area behind the front door. In addition, the State presented security camera footage from approximately 8:08 a.m. depicting a person, possibly Nurein, moving around just outside of Zahra's apartment. (State's Ex. 64). Finally, the State elicited testimony from Brenda that, before she witnessed the shooting, she heard a male voice yell, "This is the last time!" (May 10, 2021 Tr., Vol. II, at 65).

{¶51} Viewing this evidence in a light most favorable to the State, a reasonable trier of fact could find that, shortly after 8:00 a.m., Nurein was screaming outside of Zahra's apartment when he discharged a handgun at close range toward the deadbolt lock used to secure Zahra's front door. Based on the circumstances surrounding the shooting, a reasonable trier of fact could also find that Nurein directed the shot toward Zahra's front door in an attempt to forcibly enter Zahra's apartment by disabling the deadbolt lock. "Evidence of forcible entry into a residence * * * permits the reasonable inference that the defendant did not have permission to enter." *State v. Davis*, 2d Dist. Montgomery No. 22780, 2009-Ohio-2539, ¶ 13. We believe the same inference is permissible from evidence of attempted forcible entry. Therefore, notwithstanding Nurein's arguments, we conclude that the State presented sufficient evidence from which a reasonable trier of fact could conclude that Nurein was without privilege to enter Zahra's apartment at the time of the shooting. Accordingly, we conclude that the jury's verdicts on Counts Six and Seven are supported by sufficient evidence.[3]

{¶52} Nurein's second assignment of error is overruled.

---

[3] We note that Counts Six and Seven merged for purposes of sentencing. "'[W]hen counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency [or weight] of the evidence on the count that is subject to merger because any error would be harmless' beyond a reasonable doubt." *State v. Adkins*, 3d. Dist. Allen No. 1-19-71, 2020-Ohio-6799, ¶ 39, quoting *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14. Thus, because the State elected to have Nurein sentenced for Count Six, we could have declined to consider whether sufficient evidence supports the jury's verdict on Count Seven. However, because the entirety of Nurein's sufficiency argument related to an element that is common both to Count Six and to Count Seven, we deemed it unnecessary to resolve Nurein's argument on separate bases.

**E. First Assignment of Error: Are the jury's verdicts on Counts One through Seven against the manifest weight of the evidence?**

{¶53} In his first assignment of error, Nurein argues that the jury's guilty verdicts on Counts One through Seven are against the manifest weight of the evidence. Nurein contends that the evidence weighs strongly against the jury's finding that he was the person who shot at Zahra's apartment on the morning of February 13, 2021.

**i. Standard for Manifest-Weight-of-the-Evidence Review**

{¶54} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's

judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

**ii. The jury's verdicts on Counts One through Seven are not against the manifest weight of the evidence.**

{¶55} In this assignment of error, Nurein does not focus on any particular element of the offenses charged in Counts One through Seven or on the evidence the State offered to prove any such element. Instead, Nurein's argument centers on identity and his claim that the evidence weighs heavily against a finding that he was the perpetrator of the shooting. Yet, as we explained under Nurein's fourth assignment of error, the State presented considerable competent, credible evidence establishing that Nurein was the person who shot at Zahra's apartment on the morning of February 13, 2021. Nurein counters by arguing that the State's evidence was merely circumstantial and that, in light of Zahra's adamant testimony that he did not shoot at her apartment, the evidence supporting his guilt was eclipsed by the evidence demonstrating his innocence. However, "[c]ircumstantial evidence and direct evidence possess the same probative value" and "a conviction based solely on circumstantial evidence is no less sound than one based on direct evidence." *State v. Myles*, 3d Dist. Marion No. 9-19-74, 2020-Ohio-3323, ¶ 32. Furthermore, "[d]eterminations of credibility and weight of the testimony are primarily for the trier of fact," and in assessing a witness's credibility, the trier of fact may believe "'all, part, or none of [the] witness's testimony.'" *State v. Ferrell*, 10th Dist.

Franklin No. 19AP-816, 2020-Ohio-6879, ¶ 57, quoting *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21. In light of the State's substantial, if mostly circumstantial, evidence identifying Nurein as the shooter, and considering the potential issues with Zahra's credibility examined under Nurein's third assignment of error, the jury did not clearly lose its way by discounting Zahra's testimony and finding that Nurein was the shooter. Therefore, we conclude that the jury's verdicts on Counts One through Seven are not against the manifest weight of the evidence.[4]

**{¶56}** Nurein's first assignment of error is overruled.

## F. Sixth Assignment of Error: Did Nurein receive ineffective assistance of counsel?

**{¶57}** In his sixth assignment of error, Nurein argues that he received ineffective assistance of counsel. Nurein claims that his trial counsel performed deficiently by failing to object to the admission of K.A.'s video-recorded statement and by failing to proffer evidence supporting his defense theory, namely that Riyann was the person who shot at Zahra's apartment.

---

[4] Like Nurein's sufficiency-of-the-evidence argument, we could have employed two different lines of reasoning to reject his contention that the verdicts on Counts Six and Seven are against the manifest weight of the evidence. *See* Footnote 3, *supra*, and *Adkins*, 2020-Ohio-6799, at ¶ 39. We again found it unnecessary to do so.

**i. Ineffective-Assistance-of-Counsel Standard**

**{¶58}** "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989).

**{¶59}** Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

## ii. Nurein failed to establish that he received ineffective assistance of counsel.

**{¶60}** To begin, through our resolution of Nurein's fourth assignment of error, we have effectively preempted Nurein's argument that he received ineffective assistance of counsel due to his trial counsel's failure to object to the admission of K.A.'s recorded statement. Under Nurein's fourth assignment of error, we concluded that the trial court did not commit plain error by admitting the recording of K.A.'s statement because even if the statement had been excluded, the outcome of Nurein's trial would not have changed. That is, we concluded that Nurein failed to demonstrate that he was prejudiced by the admission of the statement. To show plain error, "[t]he accused is * * * required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22. Therefore, as the prejudice standards for plain-error and ineffective-assistance-of-counsel claims are the same, we have already determined that Nurein was not prejudiced by his trial counsel's performance with

-35-

respect to the admission of K.A.'s recorded statement, regardless of whether such performance was deficient. For this reason, we need not further consider this component of Nurein's ineffective-assistance-of-counsel claim. *See State v. Jarrell*, 4th Dist. Gallia No. 15CA8, 2017-Ohio-520, ¶ 51.

{¶61} As for Nurein's claim that his trial counsel was ineffective for failing to proffer evidence that would have supported his defense theory, we cannot properly conclude whether his trial counsel performed deficiently or whether he was prejudiced. From the available record, we cannot determine what Nurein's trial counsel's proffer would have entailed had such proffer been made. In fact, the record contains no indication that Nurein's trial counsel even had evidence of Riyann's guilt available to proffer, and "[d]efense counsel cannot be found to be ineffective by failing to present or proffer evidence that does not exist." *State v. Jackson*, 2d Dist. Montgomery No. 26050, 2015-Ohio-5490, ¶ 30. In any case, evidence implicating Riyann in the shooting, if it exists, is entirely outside of the record. "If an ineffective assistance of counsel claim concerns facts that are outside the record, we cannot consider the claim on direct appeal because we can only consider matters contained in the record." *State v. Hall*, 10th Dist. Franklin No. 04AP-1242, 2005-Ohio-5162, ¶ 60. Without knowing what evidence, if any, was available for Nurein's trial counsel to proffer showing that Riyann committed the offense, we can only speculate as to whether it was unreasonable for Nurein's trial

counsel to not make a proffer or whether the proffer would have affected the outcome of Nurein's trial. Thus, it is not possible for us to determine the ineffective-assistance-of-counsel claim. *See id.* Accordingly, we conclude that Nurein failed to establish that he received ineffective assistance of counsel.

**{¶62}** Nurein's sixth assignment of error is overruled.

### IV. Conclusion

**{¶63}** For the foregoing reasons, Nurein's six assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Union County Court of Common Pleas.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**