[Cite as *State v. Windland*, 2024-Ohio-1760.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | JUDGES: |
|---|---|
| | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 2023 CA 00068 |
| DUSTIN M. WINDLAND | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:    Appeal from the Licking County Court of Common Pleas, Case No. 2023 CR 00230


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    May 6, 2024


APPEARANCES:


For Plaintiff-Appellee

JENNY WELLS
Licking County Prosecuting Attorney

KENNETH W. OSWALT
Assistant Prosecuting Attorney
20 S. Second Street, 4th Street
Newark, Ohio 43055

For Defendant-Appellant

BRIAN A. SMITH
123 S. Miller Road, Suite #250
Akron, Ohio 44333

*Hoffman, J.*

{¶1}    Defendant-appellant Dustin Windland appeals the judgment entered by the Licking County Common Pleas Court convicting him following his pleas of no contest to aggravated trafficking in methamphetamine (R.C. 2925.03(A)(2)(C)(1)(3)), aggravated possession of drugs (R.C. 2925.11(A)(C)(1)(d)), trafficking in a fentanyl-related compound (R.C. 2925.03(A)(2)(C)(9)(d)), possession of a fentanyl-related compound (R.C. 2925.11(A)(C)(11)(c)), having weapons while under disability (R.C. 2923.13(A)(2)), and possession of cocaine (R.C. 2925.11(A)(C)(4)(a)), with a firearm specification (R.C. 2941.141(A)) and a forfeiture specification (R.C. 2981.02(A)(1)(C), 2941.1417(A)), and sentencing him to an aggregate prison term of nine to eleven and one-half years.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On March 21, 2023, detectives with the Central Ohio Drug Enforcement Task Force were contacted by a confidential informant who told them Appellant was selling large amounts of methamphetamine from 374 Seroco Avenue in Newark, Ohio.  The informant stated Appellant had a safe in the living room of the home, which contained narcotics and firearms.  The informant further advised three large pit bulls and a security video camera protected the residence.  Detective Kyle Boerstler verified the presence of the camera.  He conducted surveillance on the property from March 21 through March 30, 2023, and observed individuals entering through the rear entranceway to the residence and exiting after short durations, consistent with drug trafficking activity.

{¶3}    Kelow Jones was stopped in a motor vehicle leaving the residence on March 21, 2023.  He was arrested on a warrant, and methamphetamine was found in his

vehicle. Jones advised police he knew the occupant of the home as "Dustin," and they were friends on Facebook.

{¶4} Detective Boerstler received information from a confidential source on April 3, 2023, stating Appellant would be traveling to Columbus to pick up three ounces of fentanyl and a pound of methamphetamine. The detective observed Appellant arrive at the residence, exit his vehicle, and remove a padded grey tool box with a visible padlock before entering the residence.

{¶5} Detective Boerstler obtained a search warrant for the residence on April 3, 2023. Appellant was detained in a traffic stop prior to execution of the warrant, and agreed to return to the address to restrain his dogs. Police recovered a loaded handgun from the residence. Police also recovered a safe from the residence, which contained numerous baggies of a white powdery substance, a box of ammunition which would fit the recovered handgun, digital scales, empty baggies, and a bag of marijuana. Appellant admitted the safe, along with the drugs found inside, belonged to him. He admitted to handling and moving the recovered firearm. The drugs were tested and determined to be 227.5412 grams of methamphetamine, 5.7427 grams of fentanyl, and 3.3831 grams of cocaine.

{¶6} Appellant was under a disability for possession of a firearm by virtue of prior convictions of aggravated robbery and felonious assault. At the time of his arrest, he was under parole supervision from prior convictions.

{¶7} Appellant was indicted by the Licking County Grand Jury with aggravated trafficking in methamphetamine, aggravated possession of methamphetamine, trafficking in a fentanyl-related compound, possession of a fentanyl-related compound, having a

weapon under disability, and possession of cocaine, with a firearm specification and a forfeiture specification as to the firearm.

{¶8}   Appellant filed a motion to suppress evidence taken from the search of his home on the basis the information provided in the affidavit did not provide probable cause to support the issuance of the search warrant.  The trial court overruled the motion without an evidentiary hearing.  Appellant also moved to dismiss the charge of having a weapon under disability and the firearm specification on the basis the charges violated his Second Amendment right to bear arms.  The trial court overruled the motion.

{¶9}   Appellant entered pleas of no contest to all charges and was convicted.  The trial court found the convictions of aggravated trafficking and aggravated possession of methamphetamine merged, and the State elected to have Appellant sentenced on aggravated trafficking in methamphetamine.   The trial court found the charges of trafficking in a fentanyl-related compound and possession of a fentanyl-related compound merged, and the State elected to have Appellant sentenced on the trafficking conviction. The trial court sentenced Appellant to five to seven and one-half years incarceration for aggravated trafficking in methamphetamine, one year incarceration for trafficking in a fentanyl-related compound, one year incarceration for having a weapon under disability, one year incarceration for possession of cocaine, and one year incarceration on the firearm specification, to be served consecutively for an aggregate term of incarceration of nine to eleven and one-half years.  It is from the September 19, 2023 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS COUNT 5 AND THE FIREARM SPECIFICATION FOUND IN THE INDICTMENT, IN VIOLATION OF APPELLANT'S RIGHT TO BEAR ARMS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 4 OF THE OHIO CONSTITUTION, BECAUSE R.C. 2923.13(A)(2) IS UNCONSTITUTIONAL, BOTH ON ITS FACE AND AS APPLIED TO APPELLANT, FOR VIOLATING THE SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 4 OF THE OHIO CONSTITUTION.

II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS, IN VIOLATION OF APPELLANT'S RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

III. THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES UNDER R.C. 2929.14(C)(4) WAS NOT SUPPORTED BY THE RECORD.

I.

{¶10} In his first assignment of error, Appellant argues the trial court erred in convicting him of having a weapon under disability and of the firearm specification, as the

statutes under which he was convicted are unconstitutional under the United States and Ohio Constitutions, both facially and as applied to him.

**{¶11}** Whether a statute is unconstitutional is a question of law subject to de novo review. *Cleveland v. State,* 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 15, *citing Crutchfield Corp. v. Testa,* 151 Ohio St.3d 278, 2016-Ohio-7760, 88 N.E.3d 900, ¶ 16. In a de novo review, we review the merits of the case independently, without any deference to the trial court. *Sosic v. Stephen Hovancsek & Assocs., Inc.,* 8th Dist. Cuyahoga No. 109993, 2021-Ohio-2592, ¶ 21.

**Having a Weapon Under Disability**

**{¶12}** Appellant filed a motion to dismiss challenging the constitutionality of R.C. 2923.13(A)(2), of which he was ultimately convicted:

> (A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

**{¶13}** Pursuant to *New York State Rifle & Pistol Assn., Inc. v. Bruen,* 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387, when a statute infringes on a person's Second Amendment right to bear arms, the burden is on the State to demonstrate the "regulation

is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17, 142 S.Ct. at 2126.

{¶14} In *Bruen*, the challenged statute prohibited a person from carrying a firearm without a license, and to obtain a license the person must prove "proper cause," defined as demonstrating a special need for self-protection distinguishable from that of the general community. In finding the "proper cause" requirement violated the Second Amendment, the court held to justify a firearm regulation, the burden is on the government to demonstrate the regulation is consistent with this Nation's historical tradition. 597 U.S. at 17, 142 S.Ct. 2111. However, throughout the opinion the court repeatedly referred to the Second Amendment's protection of the rights of law-abiding citizens. The court noted the Second Amendment elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense. *Id.* at 26, 142 S.Ct. 2111. While the court chose not to provide an exhaustive list of the features which would render a current regulation relevantly similar to a historical regulation under the Second Amendment, the court pointed toward two metrics: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29, 142 S.Ct. 2111. The court took note of the fact the petitioners in *Bruen* were ordinary, law-abiding, adult citizens. *Id.* at 31-32, 142 S.Ct. 2111. In reviewing New York's proper-cause requirement, the court noted apart from a few outliers, American governments have not required law-abiding, responsible citizens to demonstrate a special need for self-protection to possess a firearm. *Id.* at 70, 142 S.Ct. 2111. The ultimate holding of the court found New York's proper cause requirement violates the Second Amendment in that it prevents law-abiding citizens of ordinary self-

defense needs from exercising their right to keep and bear arms. *Id.* at 71, 142 S.Ct. 2111.

**{¶15}** Concurring separately, Justice Alito noted the *Bruen* holding decided nothing about who may lawfully possess a firearm, but merely decided the Second Amendment protects the right of law-abiding people to carry a gun outside of their home for self-defense. *Id.* at 72, 76, 142 S.Ct. 2111. Similarly, Justice Kavanaugh also concurred separately, noting nothing in *Bruen* should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons. *Id.* at 81, 142 S.Ct. 2111.

**{¶16}** In *State v. Jenkins*, 5th Dist. Licking No. 2023 CA 00058, 2024-Ohio-1094, this Court found the trial court did not commit plain error in convicting the defendant of having a weapon under disability pursuant to R.C. 2923.13(A)(3), which precludes possession of a firearm by a person under indictment for or convicted of a felony drug offense, as the statute was not obviously unconstitutional. Likewise, the Eighth District Court of Appeals found no plain error under the Second Amendment in convicting a defendant a defendant of violating R.C. 2923.13(A)(2) and (3). *State v. Johnson*, 8th Dist. Cuyahoga No. 113034, 2024-Ohio-1163, ¶ 30. It appears no post-*Bruen* case law exists in Ohio on the constitutionality of any of the provisions of R.C. 2923.13, in a case where the error was properly preserved for appeal, and thus not subject to plain error analysis.

**{¶17}** However, numerous federal courts have considered the constitutionality of similar United States Code provisions. Although 18 USC 922 does not have a provision which, like R.C. 2923.13(A)(2), prohibits gun possession by a person convicted of a felony offense of violence, federal law does prohibit possession of a firearm by a person who

has been convicted of a crime punishable by more than a year in prison, and also prohibits possession of a firearm by a person who is an unlawful user or addicted to any controlled substance. 18 USC 922(g)(1),(3).

{¶18} A few federal cases have found these provisions of the United States Code unconstitutional pursuant to the *Bruen* test. In *United States v. Daniels*, the Fifth Circuit Court of Appeals found the ban on firearm possession unconstitutional in a case where the defendant, who was sober when arrested, admitted to using marijuana multiple times a month. 77 F. 4th 337 (Fifth Cir. 2023). The Fifth Circuit also held a federal statute prohibiting firearm possession by a person subject to a domestic violence restraining order unconstitutional. *United States v. Rahimi,* 61 F. 4th 443 (Fifth Circ. 2023). The Third Circuit Court of Appeals found the provision prohibiting a felon from possessing a weapon unconstitutional as applied to a person convicted of making a false statement to obtain food stamps, but noted the decision was narrow, and only as applied to the defendant, given his specific prior violation. *Range v. Atty. Gen. United States of America*, 69 F.4th 96, 106 (Third Cir. 2023).

{¶19} However, the overwhelming weight of federal authority upheld federal prohibitions on possession of weapons by felons and/or persons using controlled substances as constitutional under *Bruen*, as summarized by the United States District Court for the Northern District of Iowa:

> This Court is not alone in reaching the conclusion that Section 922(g)(3) does not violate the Second Amendment. Numerous other district courts have reaffirmed the conclusion that Section 922(g)(3) is

constitutional after *Bruen*. *See, e.g., United States v. Walker*, 8:22-CR-291, 2023 WL 3932224, at *5 (D. Neb. June 9, 2023) (rejecting post-*Bruen* challenge to Section 922(g)(3), finding the *Seay* case controlling); [*United States v. Le*, [669 F.Supp.3d 754, —— (S.D. Iowa 2023)] (rejecting a post-*Bruen* constitutional challenge to Section 922(g)(3)); *United States v. Posey,* [655 F.Supp.3d 762, —— – ——] (N.D. Ind. 2023) (denying as applied and facial post-*Bruen* challenge to Section 922(g)(3)); *United States v. Lewis*, [650 F.Supp.3d 1235, ——] (W.D. Okla. 2023) (rejecting a post-*Bruen* constitutional challenge to Section 922(g)(3)); *United States v. Sanchez,* [646 F.Supp.3d 825, ——] (W.D. Tex. 2022) (holding that Section 922(g)(3) is "consistent with this Nation's historical tradition of firearm regulation");[ *Fried v. Garland*, 640 F.Supp.3d 1252, 1263 (N.D.Fla. 2022)] ("At bottom, the historical tradition of keeping guns from those the government fairly views as dangerous—like alcoholics and the mentally ill— is sufficiently analogous to modern laws keeping guns from habitual users of controlled substances .... The challenged laws are consistent with the history and tradition of this Nations' [sic] firearm regulation."); *United States v. Seiwert*, Case No. 20 CR 443, 2022 WL 4534605, at *2 (N.D. Ill. Sept. 28, 2022) (holding that Section "922(g)(3) is relevantly similar to regulations aimed at preventing dangerous or untrustworthy persons from possessing and using firearms, such as individuals convicted of felonies or suffering from mental illness"); *United States v. Daniels*, 610 F.Supp.3d 892, 897 (S.D. Miss. 2022) (finding Section 922(g)(3) constitutional after determining

that "analogous statutes which purport to disarm persons considered a risk to society—whether felons or alcoholics—were known to the American legal tradition").

**{¶20}** *United States v. Ledvina*, 2023 WL 5279470, *6 (N.D. Iowa Aug. 16, 2023).

**{¶21}** In summary, the federal courts upholding the constitutionality of the federal weapons under disability restrictions have pointed to the historical tradition of keeping guns from individuals viewed as dangerous, including felons. We find this history particularly applicable to the statute at issue in the instant case, which precludes the possession of firearms by persons convicted of a felony offense of violence. We find the trial court did not err in concluding R.C. 2923.13(A)(2) was not facially unconstitutional.[1]

**{¶22}** Appellant also argues the statute is unconstitutional as applied to him. In an as-applied challenge, the challenger contends the statute's application violates his or her constitutional rights under the circumstances of a particular case. *United States v. Christian Echoes Natl. Ministry, Inc.,* 404 U.S. 561, 565, 92 S.Ct. 663, 30 L.Ed.2d 716 (1972).

**{¶23}** We find Appellant has not demonstrated the statute is unconstitutional as applied to him. As noted in our discussion of Appellant's facial challenge to R.C. 2923.13(A)(2), federal case law has recognized the long history of regulating possession of firearms by people who are considered dangerous. At the hearing in the instant case, the State presented evidence Appellant had been convicted in 2006 in Franklin County

---

[1] We further note Ohio's ban on possession of a firearm by a person convicted of a felony offense of violence is not necessarily a lifetime ban, as R.C. 2923.14 allows a person to seek relief from weapons disability under certain circumstances.

of two counts of aggravated robbery, one count including a firearm specification, and of felonious assault in Ross County in 2014.

{¶24} Finally, Appellant argues the Ohio Constitution provides greater protection for arms' possession than the United States Constitution, and his conviction violates the Ohio Constitution. This argument was not raised in the trial court, and this Court has previously rejected a claim of plain error based on the Ohio Constitution:

The language of the Second Amendment to the United States Constitution provides, " '[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.' " Article I, Section 4 of the Ohio Constitution sets forth a similar guarantee: "The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be kept up; and the military shall be in strict subordination to the civil power." In the past, the Ohio Supreme Court has distinguished its analysis of claims arising under the Ohio Constitution on the basis that, unlike the United States Constitution, Ohio's Constitution guaranteed the right to bear arms to individual citizens. *Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993). However, even prior to *Bruen*, the United States Supreme Court has found the Second Amendment likewise guarantees the right to bear arms to individual citizens. *See District of Columbia v. Heller,* 554 U.S. 570, 595, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) (holding the Second Amendment guarantees the right to keep and bear arms to

individuals); *McDonald v. Chicago*, 561 U.S. 742, 750, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (holding the Second Amendment is fully applicable to the States by application of the Fourteenth Amendment). Because the United States Constitution now equally protects the right of the individual to bear arms, we see no obvious distinction between the Ohio Constitution and the United States Constitution. For the reasons stated in our consideration of Appellant's claims under the United States Constitution, we find Appellant has not demonstrated R.C. 2923.13(A)(3) is obviously unconstitutional under the Ohio Constitution, and we therefore find no plain error.

**{¶25}** *State v. Jenkins*, 5th Dist. Licking No. 2023 CA 00058, 2024-Ohio-1094, ¶ 28.

**{¶26}** For the reasons set forth in *Jenkins*, we find no plain error in the trial court's failure to sua sponte find Appellant's conviction violates the Ohio Constitution.

**Firearm Specification**

**{¶27}** Appellant also argues the trial court erred in failing to dismiss the firearm specification as a violation of his right to bear arms under the United States and Ohio Constitutions. The firearm specification assessed an additional penalty of one year incarceration because Appellant "had a firearm on or about the offender's person or under the offender's control while committing the offense."

**{¶28}** The language of the Second Amendment to the United States Constitution provides, " '[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.' " Article I, Section 4 of

the Ohio Constitution sets forth a similar guarantee: "The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be kept up; and the military shall be in strict subordination to the civil power."  At the outset, we question whether the enhancement of a sentence for possession of firearm while committing a crime is an "infringement" on the right of people to keep and bear arms.

{¶29}  However, assuming arguendo the possession of a firearm while committing a crime is implicated by the Second Amendment to the United States Constitution and Article I, Section 4 of the Ohio Constitution, for the reasons set forth in our discussion of Appellant's argument concerning the constitutionality of R.C. 2913.23(A)(2), we find the penalty enhancement for having a weapon on the offender's person or under the offender's control while committing an offense is constitutional under the United States and Ohio Constitutional provisions protecting the right to bear arms.  Because we have found historical support for the limitation on the right to bear arms by those who have committed felonies of violence, we find the same historical support permits the statutory sentence enhancement for possession of a firearm while committing a crime.  In ruling on a claim the federal statute which enhances the level of an offense when the offender possessed a firearm violates *Bruen*, the United States District Court for the North District of Indiana held:

> *Bruen* is rife with historical observations that would exclude from Second Amendment protections individuals that carry firearms to facilitate crime. *Id.* at 2145 (observing that colonial firearm laws "prohibit bearing

arms in a way that spreads 'fear' or 'terror' among the people"); 2150 ("[u]nder the common law, individuals could not carry deadly weapons in a manner likely to terrorize others"); 2152 (citing an 1866 South Carolina law providing "no disorderly person, vagrant, or disturber of the peace, shall be allowed to bear arms"); 2156 (noting that reasonable, well-defined restrictions on firearm possession include those that limit "the intent for which one could carry arms"); 2162 ("nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill") (quoting *Heller*, 554 U.S. at 626–27, 128 S.Ct. 2783). And, as the Government's supplemental authority notes, "the people" whose right to bear arms is protected by the Second Amendment are the "law-abiding," responsible citizens, not those who would violate the nation's laws. *Range v. Attorney Gen. U.S.,* 53 F.4th 262, 283–84 (3d Cir. 2022). Section 2D1.1(b)(1) punishes firearm possession only when it occurs in relation to a federal drug offense. Definitionally, then, it applies only to those who are actively violating the nation's drug laws. The guideline falls well-within this nation's historical limitations of gun ownership and passes constitutional muster.

**{¶30}** *United States v. Love,* 647 F.Supp.3d 664, 670(N.D. Indiana 2022).

**{¶31}** The first assignment of error is overruled.

II.

**{¶32}** In his second assignment of error, Appellant argues the trial court erred in overruling his motion to suppress. He argues the affidavit in support of the warrant was insufficient to establish probable cause because the confidential sources were not identified in any manner, the affidavit fails to establish how the confidential sources obtained the information, and the affiant did not personally corroborate the information provided by the confidential sources. He argues the affidavit was so lacking in probable cause as to render the "good faith" exception to the exclusionary rule inapplicable.

**{¶33}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf,* 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial

court's findings of fact is subject to a de novo standard of review. *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

{¶34} Appellant has raised legitimate legal concerns about whether the affidavit established probable cause for the warrant issued in this case. The detective generally vouched for the credibility of the informant or informants, and conducted limited surveillance of the residence. The detective confirmed the residence had a security camera as represented by the informant; however, security cameras are common on homes, and not necessarily indicative of drug activity. Further, while Kelow Jones was found to have methamphetamine in his car after leaving the residence, and identified the occupant of the home as "Dustin," the affidavit does not link the drugs found in the vehicle to a purchase made from the residence, nor does the affidavit represent Jones identified "Dustin" as a drug dealer. However, we need not address whether the affidavit provided probable cause to support the issuance of a warrant if we find the police relied on the warrant in good faith.

{¶35} The "good faith exception" to the exclusionary rule is set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and adopted by the Ohio Supreme Court in *State v. Wilmoth,* 22 Ohio St.3d 251, 490 N.E.2d 1236 (1986). Under the "good faith exception," the exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate, but ultimately found to be unsupported by probable cause. *State v. George,* 45 Ohio St.3d 325, 330, 544 N.E.2d 640 (1989), *citing Leon, supra* at 918-23, 926, 104

S.Ct. 3405. However, even under the "good faith exception," suppression of evidence is appropriate where any of the following occurs:

> * * the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * *; (2) * * * the issuing magistrate wholly abandoned his judicial role * * *; (3) an officer purports to rely upon * * * a warrant based upon an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) * * * depending on the circumstances of the particular case, a warrant may be so facially deficient-i.e. in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

{¶36} *State v. Quin,* 5th Dist. Licking No. 2021 CA 00044, 2021-Ohio-4205, ¶ 15, *citing Leon*, *supra* at 923, 104 S.Ct. 3405.

{¶37} Appellant argues the warrant was based upon an affidavit so lacking in probable cause as to render official belief in its existence entirely unreasonable. An affidavit lacks the requisite indicia of probable cause if it is a "bare bones" affidavit. *United States v. Ward,* 967 F.3d 550, 554 (6th Cir. 2020), *citing United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). A bare-bones affidavit is commonly defined as one which states only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v.*

*White,* 874 F.3d 490, 496, *citing United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) "Put more simply, a bare-bones affidavit is a conclusory affidavit, one that asserts 'only the affiant's belief that probable cause existed.'" *Id.*

**{¶38}** In the affidavit, Detective Boerstler averred on March 21, 2013, he was contacted by a confidential source, who has "previously and consistently provided reliable information," who reported Appellant was selling large amounts of methamphetamine from a residence. The informant provided the address and a description of the outside of the house, and stated a safe in the living room contained narcotics and firearms. The informant advised there were three pit bull canines and security video cameras on the residence. Detective Boerstler verified the presence of a security camera over the rear door, and during surveillance observed vehicles stopping, individuals entering through the rear entrance to the residence, and exiting after a short duration.

**{¶39}** The affidavit further stated a vehicle was stopped leaving the home on March 21, 2023. Kelow Jones, an occupant of the vehicle who was known to the detective as a drug-involved individual, was arrested on a warrant. Methamphetamine was recovered from the vehicle, and Jones told police he knows the occupant of the home as "Dustin."

**{¶40}** The affidavit stated on April 3, 2023, the affiant received a text message from a confidential source, who has previously provided reliable information, stating Appellant would be leaving to travel to Columbus to pick up fentanyl and methamphetamine. The informant provided the combination for the safe in the home where the drugs would be stored. The informant previously purchased drugs from Appellant, has previously been inside the residence, and was aware of the existence of

firearms in the residence. The informant advised at least two other individuals stay at the residence and sell drugs under Appellant's direction. The detective saw Appellant arrive at the residence on April 3, 2023, exit the vehicle, and remove a padded grey tool box with a visible padlock.

{¶41} We find the affidavit is not so lacking in in indicia of probable cause as to render official belief in its existence entirely unreasonable. The affidavit included an assertion the informant(s) had provided reliable information in the past. The informant who provided the April 3, 2023 tip stated he or she had been inside the residence, and had purchased drugs in the past from Appellant. Police conducted some surveillance of the residence, observing people coming and going with visits of short duration, and confirming the existence of a security camera. Jones was stopped and arrested leaving the house with methamphetamine in his car. Jones was known by police to be involved with drugs, and while Jones did not state he purchased the drugs from the house, he did identify the person inside as "Dustin," whom Jones was friends with on Facebook. We find the affidavit was not a bare bones affidavit, and the police could rely on the affidavit in good faith. We find the trial court did not err in overruling Appellant's motion to suppress.

{¶42} The second assignment of error is overruled.

III.

{¶43} In his third assignment of error, Appellant argues the trial court's imposition of consecutive sentences was not supported by the record. He argues the reason he has spent most of his adult life in prison is because when he is released, he is not provided with resources, and ends up returning to crime to survive. He argues the prison system

has failed him in its purpose of rehabilitation, and the way to prevent him from committing future offenses is to provide him with treatment and with assistance for housing and employment rather than by imposing longer prison terms.

{¶44} R.C. 2929.14(C)(4) provides:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a)The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶45}** The trial court must make the R.C. 2929.14(C)(4) findings at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings, nor must it recite certain talismanic words or phrases in order to be considered to have complied. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus.

**{¶46}** In deciding whether to impose consecutive sentencing, the trial court is to consider the aggregate term of incarceration which will result from consecutive sentencing. *State v. Gwynne*, 2022-Ohio-4607, 2022 WL 17870605, ¶¶14-15. In *Gwynne*, the Ohio Supreme Court clarified the standard of review this Court is to use on review of consecutive sentences:

It is important to understand that the standards referenced above have very specific meanings and fall into one of two categories—either a standard of review or an evidentiary standard of proof. "Abuse of discretion," "clearly erroneous," and "substantial evidence" are traditional forms of appellate-court deference that are applied to a trial court's decisions. They are standards of review that are applied by a reviewing court to certain decisions that are made by a fact-finder. They are, in essence, screens through which reviewing courts must view the original fact-finder's decision.

In contrast, "preponderance," "clear and convincing," and "beyond a reasonable doubt" are evidentiary standards of proof. These standards apply to a fact-finder's consideration of the evidence. R.C. 2953.08(G)(2)'s requirement that appellate courts apply the clear-and-convincing standard on review indicates that the legislature did not intend for appellate courts to defer to a trial court's findings but to act as a second fact-finder in reviewing the trial court's order of consecutive sentences.

In this role as a finder of fact, the appellate court essentially functions in the same way as the trial court when imposing consecutive sentences in the first instance. There are three key differences, however. The first difference, which is discerned from the language of R.C. 2953.08(G)(2), is that the appellate court is constrained to considering only the findings in R.C. 2929.14(C)(4) that the trial court has actually made. In other words, a reviewing court cannot determine for itself which of the three permissible findings within R.C. 2929.14(C)(4)(a)-(c) might apply to satisfy the third required finding for imposing consecutive sentences, as the trial court is permitted to do. The second difference involves the standard of proof. Whereas the trial court's standard of proof under R.C. 2929.14(C)(4) is a preponderance of the evidence—i.e., that when considered as a whole, the evidence demonstrates that the proposition of fact represented by the finding is more likely true, or more probable, than not—an appellate court applies a clear and convincing evidence standard of proof. And the third difference is the inversion of the ultimate question before the court.

Whereas the trial court is tasked with determining whether the proposition of fact represented by each finding is more likely—or more probably—true than not, an appellate court's task is to determine whether it has a firm belief or conviction that the proposition of fact represented by each finding is not true on consideration of the evidence in the record.

Thus, when viewed in its proper context, the deference that a trial court's consecutive-sentence findings receive comes from the language of R.C. 2953.08(G)(2), which imposes a higher evidentiary standard to reverse or modify consecutive sentences. It does not stem from any statutory requirement that the appellate court defer to the trial court's findings when considering whether reversal or modification is appropriate under R.C. 2953.08(G)(2).

**{¶47}** *Id.* at ¶¶20-22.

**{¶48}** The trial court found consecutive sentences are necessary to protect the public from future crime or to punish Appellant, consecutive sentences are not disproportionate to the seriousness of Appellant's conduct and to the danger Appellant poses to the public, Appellant committed one or more of the multiple offenses while Appellant was under parole supervision, and Appellant's criminal history demonstrates consecutive sentences are necessary to protect the public from future crime by Appellant.

**{¶49}** Appellant argues his lengthy criminal history weighs against the imposition of consecutive sentences because the prison system has not achieved its purpose of rehabilitation during his past periods of incarceration.  He argues the mandatory sentence

on the firearm specification is sufficient punishment for having the weapon, and thus his sentence for having the weapon under disability should not be imposed consecutively.

{¶50}  A plain reading of R.C. 2929.14(C)(4) reflects a legislative purpose to allow the trial court to impose consecutive sentences on offenders with a lengthy criminal history and a high rate of recidivism.  In this case, not only has Appellant engaged in the commission of criminal offenses for the majority of his adult life, but he was on supervision from a prior offense at the time the instant offenses were committed.  We find the record supports the trial court's findings imposing consecutive sentences.

{¶51}  The third assignment of error is overruled.

{¶52}  The judgment of the Licking County Common Pleas Court if affirmed.


By: Hoffman, J.
Delaney, P.J.  and
King, J. concur