[Cite as *State v. Stackhouse*, 2025-Ohio-5464.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

TYRICE STACKHOUSE,

    DEFENDANT-APPELLANT.

CASE NO. 13-25-06

OPINION AND
JUDGMENT ENTRY

---

**Appeal from Seneca County Common Pleas Court
Trial Court No. 24 CR 0170**

**Judgment Affirmed**

**Date of Decision:  December 8, 2025**

---

**APPEARANCES:**

    *Brian A. Smith* **for Appellant**

    *Stephanie J. Kiser* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Tyrice Stackhouse ("Stackhouse"), appeals the January 14, 2025 judgment entry of sentence of the Seneca County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from a single-vehicle accident in Fostoria, Ohio, where Stackhouse was found therein unresponsive. The vehicle, which was registered to his then girlfriend, April Iannantuono ("Iannantuono"), contained large quantities of drugs that Stackhouse initially claimed were his, allegedly to protect Iannantuono.

{¶3} On June 20, 2024, the Seneca County Grand Jury indicted Stackhouse on Count One of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(c), a second-degree felony; Count Two of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(e), a first-degree felony; and Count Three of possession of a fentanyl-related compound in violation of R.C. 2925.11(A), (C)(11)(b), a fourth-degree felony. On August 28, 2024, Stackhouse appeared for arraignment and pleaded not guilty.

{¶4} The case proceeded to a jury trial on December 16-17, 2024. Before the presentation of evidence, the State moved to exclude evidence of Iannantuono's

prior criminal (drug) conduct that resulted in an intervention in lieu of conviction.[1] On December 17, 2024, the jury found Stackhouse guilty of all three counts alleged in the indictment.

{¶5} On January 14, 2025, the trial court sentenced Stackhouse to a minimum term of 6 years to a maximum term of 9 years in prison on Count One; to a minimum term of 8 years to a maximum term of 12 years in prison on Count Two; and to 16 months in prison on Count Three. The trial court ordered the sentences imposed as to Counts One and Two to be served consecutively, and the sentence for Count Three to be served concurrently to the others, for an aggregate indefinite prison term of 14 to 18 years. The trial court also ordered this aggregate sentence to be served consecutively to a sentence that Stackhouse was already serving in a Wood County case.

{¶6} Stackhouse filed his notice of appeal on January 14, 2025. He raises three assignments of error for our review.

### First Assignment of Error

**Because the jury lost its way and created a manifest miscarriage of justice in convicting Appellant, Appellant's convictions, with respect to all counts, were against the manifest weight of the evidence.**

{¶7} In his first assignment of error, Stackhouse argues that his convictions are against the manifest weight of the evidence. In particular, Stackhouse contends

---

[1] Even though Stackhouse subpoenaed Iannantuono to testify at trial, she did not appear to testify.

that the weight of the evidence reflects that Iannantuono was the one who actually possessed the drugs.

*Standard of Review*

{¶8} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶9} Stackhouse was convicted of aggravated possession of drugs, possession of cocaine, and possession of a fentanyl-related compound. Ohio's drug

possession statute provides, in its relevant part, that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(A). To secure a conviction for drug possession under R.C. 2925.11(A), the State must prove the defendant "knowingly" possessed a controlled substance. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶10} On appeal, Stackhouse argues his convictions are against the manifest weight of the evidence, contending that the evidence suggesting Iannantuono possessed the drugs is more compelling than the evidence against him. "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 2012-Ohio-5235, ¶ 45 (3d Dist.), quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

{¶11} "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.). "'A person has "actual possession" of an item if the item is within his immediate physical possession.'" *Id.*, quoting

*State v. Williams*, 2004-Ohio-1130, ¶ 23 (4th Dist.). "A person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it." *Id.* "For constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982).

{¶12} "[T]he State may prove the existence of the various elements of constructive possession of contraband by circumstantial evidence alone." *Id.* See also *Jenks*, 61 Ohio St.3d at 272-273. "Readily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession." *State v. Ruby*, 2002-Ohio-5381, ¶ 36 (2d Dist.). "Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *State v. Voll*, 2012-Ohio-3900, ¶ 19 (3d Dist.).

{¶13} Consequently, since it is the only element that he challenges, we will address the weight of the evidence supporting whether Stackhouse possessed the drugs. Here, Stackhouse points to the evidence that the violent collision could have dislodged the drugs from a concealed part of the vehicle, meaning he never knowingly possessed them. He further contends that his on-scene admission was a false statement made only to protect Iannantuono, whose own drug history and

failure to testify at trial (even though Stackhouse subpoenaed her to testify) suggest that the contraband belonged to her.

{¶14} Decisively, the evidence presented at trial reflects that Stackhouse actually possessed the drugs because he admitted to Officer Jared Lindig ("Officer Lindig") of the Fostoria Police Department that the drugs were his. *Accord State v. Pollard*, 2025-Ohio-1706, ¶ 24 (11th Dist.). Indeed, Officer Lindig testified at trial that he was dispatched to the scene of a single vehicle accident where he found Stackhouse unresponsive and slumped across the front seat of the damaged vehicle. According to Officer Lindig, as he approached the passenger side of the vehicle, he immediately saw two bags of a white powdery substance in plain view on the passenger seat, in the proximate location where Stackhouse was found. After rousing Stackhouse by shaking him, Officer Lindig observed Stackhouse move his hands toward the area where the suspected drugs were located. He further testified that, after being read his *Miranda* rights and asked about the packages, Stackhouse first asked, "how much"—which Officer Lindig understood to be a question about the quantity of drugs found—and then admitted, "It's mine." (Dec. 16, 2024 Tr. at 114). Officer Lindig also testified that Stackhouse admitted to using cocaine earlier that evening.

{¶15} Nevertheless, Stackhouse contends that his on-scene statements should be given little weight because he was disoriented from the accident and had just been woken up. Specifically, he argues that his question of "how much" was

one of genuine confusion, not an admission of knowledge. He further asserts that his confession should have been discounted because he later revoked it, testifying that he was falsely "taking the hit" to protect Iannantuono.

{¶16} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.). "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 24.

{¶17} In this case, the jury was presented with two competing narratives. Specifically, the jury was free to credit, based on Stackhouse's explicit admission of ownership, along with the drugs' placement in plain view and his admission of recent drug use, that he actually possessed the contraband. Alternatively, the jury was free to accept Stackhouse's testimony that he was merely "taking the hit" for Iannantuono. However, the jury was free to disbelieve his explanation, just as it is free to reject any defendant's claim that another person is responsible for contraband. *Compare Ruby*, 2002-Ohio-5381, at ¶ 44 (2d Dist.) (holding that Ruby's conviction was not against the manifest weight of the evidence where the jury, as the arbiter of witness credibility, was free to disbelieve the defendant's claim that a known drug dealer who was also in the vehicle was responsible for the contraband).

{¶18} Furthermore, the jury observed Stackhouse's testimony and was made aware of Iannantuono's refusal to testify. "'"A verdict is not against the manifest weight of the evidence because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events."'" *State v. Missler*, 2015-Ohio-1076, ¶ 44 (3d Dist.), quoting *State v. Bean*, 2014-Ohio-908, ¶ 15 (9th Dist.), quoting *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.). Thus, that the jury afforded more weight to the State's evidence than Stackhouse's version of events does not render his convictions against the manifest weight of the evidence.

{¶19} For these reasons, we conclude that the trier of fact did not lose its way in determining that the evidence that Stackhouse did not possess the drugs is not more compelling and credible than the evidence that he committed the offenses of which he was convicted. Therefore, Stackhouse's convictions are not against the manifest weight of the evidence.

{¶20} Stackhouse's first assignment of error is overruled.

**Second Assignment of Error**

**The trial court abused its discretion in granting the State's Motion in Limine to exclude records from April Iannantuono's prior case in the Seneca County Court of Common Pleas, case number 18 CR 0292, in violation of Appellant's right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.**

{¶21} In his second assignment of error, Stackhouse argues that the trial court abused its discretion by excluding the records from Iannantuono's prior

-9-

criminal case. Specifically, he contends that the evidence of Iannantuono's prior intervention in lieu of conviction for trafficking in cocaine was essential to his constitutional right to present a complete defense by showing that a third party had motive and opportunity to possess the drugs found in the vehicle.

*Standard of Review*

**{¶22}** Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 2006-Ohio-2815, ¶ 62. *See also State v. Boyd*, 2025-Ohio-3248, ¶ 101 (6th Dist.) (acknowledging that a trial court's decision to grant or deny a motion in limine is reviewed under an abuse-of-discretion standard). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

**{¶23}** A motion in limine is a pretrial request requesting a court to prohibit the opposing side from presenting evidence that is so prejudicial that no instruction from the judge could cure the damage. *State v. Miller*, 2018-Ohio-4648, ¶ 8 (3d Dist.). *See also State v. French*, 72 Ohio St.3d 446, 449 (1995). "'A ruling on a motion in limine reflects the court's anticipated treatment of an evidentiary issue at trial and, as such, is a tentative, interlocutory, precautionary ruling.'" *Id.*, quoting *French* at 450. "'The established rule in Ohio is that the grant or denial of a motion

in limine is not a ruling on the evidence.'" *Id.*, quoting *State v. Thompson*, 2005-Ohio-2053, ¶ 26 (3d Dist.). "'In deciding such motions, the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial.'" *Id.*, quoting *Defiance v. Kretz*, 60 Ohio St.3d 1, 4 (1991). "Therefore, when a motion in limine is granted, finality does not attach." *State v. Foster*, 2025-Ohio-2942, ¶ 41 (3d Dist.)

{¶24} "In order to preserve for appeal any error in the trial court's resolution of a motion in limine, the objecting party must 'seek the introduction of the evidence by proffer or otherwise' at trial 'to enable the court to make a final determination as to its admissibility.'" *Miller* at ¶ 9, quoting *State v. Grubb*, 28 Ohio St.3d 199 (1986), paragraph two of the syllabus. "Then, '[a]n appellate court will . . . review the correctness of the trial court's ruling on the objection rather than the ruling on the motion in limine.'" *Id.*, quoting *State v. Wild*, 2010-Ohio-4751, ¶ 29 (2d Dist.).

{¶25} Here, prior to the presentation of evidence, the State made an oral motion in limine to exclude evidence of Iannantuono's prior intervention in lieu of conviction for trafficking in cocaine for conduct that occurred in 2018. In particular, Stackhouse sought to have the clerk of courts testify to authenticate the criminal case documents. The trial court granted the State's motion after determining that the evidence of Iannantuono's prior drug conduct was over five years old and did not tend to prove or disprove a material fact in the current case.

{¶26} At trial, Stackhouse's counsel proffered the evidence of Iannantuono's prior conviction. Although the State argued in its appellate brief that Stackhouse failed to preserve this issue, it conceded at oral argument that a proper proffer was, in fact, made. Therefore, the issue is preserved for our review, and we will address the merits of the trial court's decision.

{¶27} On appeal, Stackhouse argues the trial court abused its discretion by excluding evidence of Iannantuono's prior drug conduct, which he sought to introduce as part of his third-party guilt defense strategy. The Constitution guarantees every criminal defendant a meaningful opportunity to present a complete defense. *State v. Wesson*, 2013-Ohio-4575, ¶ 59. "However, '[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restriction.'" *Id.*, quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998). To ensure that juries are presented with reliable evidence, the Constitution grants states broad latitude to create rules that exclude certain evidence from criminal trials. *Id.* Rules that exclude evidence are constitutionally permissible and do not violate a defendant's right to present a defense, provided they serve a legitimate purpose without being arbitrary or disproportionate to that purpose and do not infringe on a weighty interest of the accused. *Id.*

{¶28} "'"A complete defense' may include evidence of third-party guilt.'" *State v. Nurein*, 2022-Ohio-1711, ¶ 38 (3d Dist.), quoting *State v. Gillispie*, 2009-Ohio-3640, ¶ 120 (2d Dist.). "But in making such a defense, the accused 'must

comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *Id.*, quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). "Thus, 'criminal defendants do not necessarily have a right to present *all* evidence of third-party guilt.'" (Emphasis in original.) *Id.*, quoting *State v. Jones*, 2018-Ohio-2332, ¶ 33 (2d Dist.). Critically, evidence of third-party guilt may be excluded if it is not relevant, meaning it is too speculative or remote to prove or disprove a material fact at trial or to sufficiently connect the third party to the crime. *Id.* at ¶ 39. Evidence offered to show a third party is guilty is frequently excluded if it is too remote from the crime or fails to establish a sufficient connection. *Id.*

{¶29} In this case, the trial court did not prevent Stackhouse from presenting a complete defense by excluding the evidence of Iannantuono's prior criminal case. Critically, consistent with the rule that evidence of third-party guilt must sufficiently connect that person to the crime, the trial court properly excluded Iannantuono's five-year-old criminal conduct. Indeed, this prior conduct, which resulted in an intervention in lieu of conviction, was properly excluded because Stackhouse did not establish a direct link between her prior criminal conduct and the drugs found in this specific incident. *Accord id.* at ¶ 42. That is, the evidence of Iannantuono's prior criminal conduct is too remote and does not sufficiently connect her to the crimes at issue in this case.

{¶30} Moreover, the trial court's decision did not prevent Stackhouse from presenting his complete defense because, through his testimony and his trial counsel's arguments, Stackhouse was able to assert his defense that Iannantuono was the person who possessed the drugs at issue in this case. *See id.* In particular, Stackhouse was able to support his defense theory with evidence that Iannantuono owned the vehicle, had a history of drug use requiring court intervention, and refused to testify at trial. Therefore, we conclude that the trial court's decision was a proper exercise of its discretion to exclude remote evidence that did not sufficiently connect Iannantuono to the crimes at issue in this case.

{¶31} Stackhouse's second assignment of error is overruled.

### Third Assignment of Error

**Because the trial court's findings to impose consecutive sentences were, by clear and convincing evidence, not supported by the record, the trial court's imposition of consecutive sentences was not supported by the record.**

{¶32} In his third assignment of error, Stackhouse challenges the trial court's decision to impose consecutive sentences. He specifically contends that the record does not support the trial court's findings for imposing consecutive sentences.

*Standard of Review*

{¶33} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is

otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. When reviewing the imposition of consecutive sentences, "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

{¶34} "Except as provided in * * * division (C) of section 2929.14, . . . a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). R.C. 2929.14(C) provides, in its relevant part, that

> the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶35} R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record before imposing consecutive sentences. *State v. Hites*, 2012-Ohio-1892, ¶ 11 (3d Dist.); *State v. Peddicord*, 2013-Ohio-3398, ¶ 33 (3d Dist.). Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Id.*; *Id.*

{¶36} The trial court must state the required findings at the sentencing hearing prior to imposing consecutive sentences and incorporate those findings into its sentencing entry. *State v. Sharp*, 2014-Ohio-4140, ¶ 50 (3d Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, ¶ 29. A trial court "has no obligation to state reasons to support its findings" and is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Bonnell* at ¶ 37.

**{¶37}** In this case, Stackhouse does not dispute that the trial court made the required statutory findings before imposing consecutive sentences. Instead, he argues the findings are not supported by the record. Specifically, he contends that the sentences are disproportionate to the seriousness of his conduct because there was no evidence that he was trafficking or using the drugs, only possessing them. He further argues that the trial court's finding based on his criminal history—R.C. 2929.14(C)(4)(c)—is not supported by the record because he was never offered treatment or diversion in his prior cases.

**{¶38}** Stackhouse's arguments are without merit, and the trial court's imposition of consecutive sentences is supported by the record. To begin with, Stackhouse's claim that the trial court's imposition of consecutive sentences is disproportionate to the seriousness of his conduct is unpersuasive. Indeed, the record reflects he was found with significant, trafficking-level quantities of contraband—namely, 55.62 grams of methamphetamine, 71.3 grams of cocaine, and 1.83 grams of a fentanyl-related compound. The sheer volume of these substances belies the argument that this was a simple possession offense and supports the trial court's finding on the seriousness of Stackhouse's conduct. *See State v. Johnson*, 2024-Ohio-72, ¶ 26 (8th Dist.).

**{¶39}** Furthermore, the trial court's finding that consecutive sentences are necessary to protect the public under R.C. 2929.14(C)(4)(c) is supported by Stackhouse's history of criminal conduct. Critically, the presentence investigation

report reflects Stackhouse's lengthy criminal history, which includes not only multiple prior convictions for drug possession and trafficking but also offenses of violence. *See State v. Combs*, 2025-Ohio-1702, ¶ 5 (3d Dist.); *State v. Gallant*, 2025-Ohio-3182, ¶ 15 (3d Dist.).

{¶40} Nevertheless, Stackhouse asserts that his criminal history does not justify consecutive sentences because he was never offered treatment—that is, he contends that his previous sanctions were punitive and not rehabilitative. Stackhouse's argument is not persuasive. Rather, a trial court's finding under R.C. 2929.14(C)(4)(c) is based on a defendant's history of criminal conduct and his or her failure to respond to past sanctions, not on the type of programming offered during those sanctions. *See State v. Windland*, 2024-Ohio-1760, ¶ 50 (5th Dist.) ("A plain reading of R.C. 2929.14(C)(4) reflects a legislative purpose to allow the trial court to impose consecutive sentences on offenders with a lengthy criminal history and a high rate of recidivism.").

{¶41} In this case, Stackhouse's own testimony confirmed this pattern of recidivism. In particular, he testified at trial that he had been on post-release control and probation multiple times, had violated the terms of his supervision repeatedly, and was sent to a community-based correctional facility ("CBCF") in 2023. This history of repeated failures while under supervision—regardless of their label—is precisely the evidence that the trial court can use to conclude that consecutive sentences are necessary to protect the public from future crime. *See id.* at ¶ 49-50

(determining that consecutive sentences were supported by the record where the defendant had a lengthy criminal history spanning most of his adult life and was on supervision at the time of the new offense, rejecting the argument that a "failure to rehabilitate" mitigates this history).

{¶42} Consequently, based on our review of the record, we conclude that the trial court's consecutive sentence findings are not clearly and convincingly unsupported by the record.

{¶43} Stackhouse's third assignment of error is overruled.

{¶44} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

 

 

 

_____
William R. Zimmerman, Judge

 

_____
Mark C. Miller, Judge

 

_____
John R. Willamowski, Judge

DATED:
/hls